**SIGNED THIS: February 11, 2025**

_____
**Mary P. Gorman**
**United States Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | Case No.    23-70218 |
| TAMMY D. COOK, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| _____ | ) | |
| In Re | ) | |
| | ) | Case No.    23-70219 |
| DEAN R. KOHN, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| _____ | ) | |
| In Re | ) | |
| | ) | Case No.    23-70220 |
| FRANK F. LUNN, IV, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| _____ | ) | |
| In Re | ) | |
| | ) | Case No.    23-90136 |
| FRANCIS S. RATHBUN, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |

## O P I N I O N

Before the Court are motions for relief from the automatic stay filed by Interinsurance Exchange of the Automobile Club seeking to pursue litigation currently pending against four individual Debtors in California state court. Final hearings were held on the motions on October 23, 2024.  For the reasons set forth herein, the motions will be denied.

## I.      Factual and Procedural Background

### A.  The Individual Cases

Although the motions for stay relief filed in each case are virtually identical and the decision on the motions is not controlled by the separate facts of each case, a brief discussion of each individual case is warranted.

#### i.      Tammy D. Cook

Tammy D. Cook, a resident of LeRoy, Illinois, filed her voluntary petition under Chapter 7 on March 24, 2023. She was represented in the filing by Attorney A. Christopher Cox; Roger Prillaman was appointed as the Chapter 7 trustee. The Trustee reported collecting over $31,000 in assets in his December 31, 2023, report and has since received $25,000 from the Debtor and her non-filing spouse to settle the Trustee's demands related to equity in their residence. Claims total almost $13.85 million, with the largest claim having been filed by Interinsurance Exchange for over $13.5 million and another claim having been filed for over $266,000 by Johnny White, the attorney representing the four Debtors in the pending California litigation.

A discharge was issued to Tammy Cook on July 3, 2023. Prior to the issuance of the discharge, Interinsurance Exchange filed a complaint to determine the dischargeability of a debt it alleges is owed to it by Tammy Cook. The complaint remains pending and will be discussed in detail below. Interinsurance Exchange initially sought stay relief on an emergency basis by motion filed on April 17, 2023. The emergency relief was denied, but the denial was without prejudice. The motion was recently renewed, and it is the current, renewed request for relief that is before the Court.

*ii.*  *Dean R. Kohn*

Dean R. Kohn, a resident of Bloomington, Illinois, filed his voluntary petition under Chapter 7 on March 24, 2023. He was represented in the filing by Attorney A. Christopher Cox; Roger Prillaman was appointed Chapter 7 trustee. At the end of 2023, the Trustee reported collecting a little more than $28,800 from Mr. Kohn, and, in March 2024, the Trustee sold a parcel of commercial real estate owned by Mr. Kohn, netting over $67,000 for the bankruptcy estate. Claims are just over $13.85 million with claims filed in this case by Interinsurance Exchange and Johnny White identical to their claims filed in the Cook case.

A discharge was issued to Dean Kohn on July 3, 2023. Prior to the entry of the discharge, Interinsurance Exchange filed a complaint to determine the dischargeability of a debt it claims is owed to it by Dean Kohn. That complaint will be discussed in detail below. Just as it had in the Cook case,

Interinsurance Exchange sought emergency relief from stay in the Kohn case to continue its litigation in California against Mr. Kohn. The emergency relief was likewise denied without prejudice. Interinsurance Exchange has renewed its motion against Mr. Kohn, and it is the renewed request that is before the Court.

### iii.    Frank F. Lunn IV

Frank F. Lunn IV, a resident of Bloomington, Illinois, at the time, filed his voluntary petition under Chapter 7 on March 26, 2023. He was represented in the filing by Attorney A. Christopher Cox; Roger Prillaman was appointed Chapter 7 trustee. The Trustee reported collecting more than $68,000 in his December 31, 2024, report. Claims exceed $16 million. Interinsurance Exchange filed a claim in this case identical to the claims it filed in the Cook and Kohn cases. Johnny White's claim filed in this case was for a little over $277,000.

A discharge was issued to Frank Lunn on July 3, 2023. Prior to the entry of the discharge, Interinsurance Exchange filed a complaint to determine the dischargeability of a debt it claims is owed to it by Frank Lunn. That complaint will be discussed in detail below. As in the previously discussed cases, Interinsurance Exchange filed an emergency motion for stay relief that was initially denied without prejudice. The request has been renewed and is now before the Court.

*iv.    Francis S. Rathbun*

Francis S. Rathbun, a resident of Fairbury, Illinois, filed his voluntary petition under Chapter 7 on March 24, 2023. He was represented in the filing by Attorney A. Christopher Cox; Roger Prillaman was appointed Chapter 7 trustee. In his December 31, 2023, report, the Trustee acknowledged collecting a little over $28,900; he has since settled with Francis Rathbun and his non-filing spouse with respect to the equity in their home for about $21,000 and the equity in some timberland for just over $32,600. Claims are a little over $13.86 million. Interinsurance Exchange and Johnny White filed claims in the Rathbun case identical to the claims they filed in the Cook and Kohn cases.

A discharge was issued to Francis Rathbun on June 27, 2023. Prior to the entry of the discharge, Interinsurance Exchange filed a complaint to determine the dischargeability of a debt it claims is owed to it by Francis Rathbun. The complaint will be discussed in detail below. As in the other cases, Interinsurance Exchange sought relief from stay on an emergency basis early in the case; the requested relief was denied without prejudice. Interinsurance Exchange's renewed request for relief from stay is now before the Court.

*B. The Three Related Cases*

When the four individual Debtors discussed above filed their bankruptcies, three related entities also filed. Interinsurance Exchange also

sought stay relief to pursue those entities. Accordingly, those three related cases warrant a brief discussion.

Acclaim Resource Partners, LLC filed its voluntary petition under Chapter 7 on March 27, 2023.[1] Frank Lunn signed the petition on Acclaim's behalf but did not state his role or title with Acclaim. The petition was filed by Attorney A. Christopher Cox. Jeffrey D. Richardson was appointed trustee. Interinsurance Exchange filed an emergency motion for relief from stay that was initially denied without prejudice. After investigation, on July 31, 2023, the Trustee filed a report of no distribution indicating he had located no assets to administer. After hearing on a renewed request for relief from stay and in the absence of objection from the Trustee or Acclaim, an order was entered on November 5, 2024, granting relief from stay to Interinsurance Exchange to pursue the California litigation as to Acclaim. The case was closed on December 19, 2024.

Kahuna Business Group, Inc. filed its voluntary petition under Chapter 7 on March 27, 2023.[2] Kahuna Business Group's petition was filed by Attorney A. Christopher Cox and signed by Frank Lunn as president. Jeana K. Reinbold was appointed trustee; pursuant to reports filed by the Trustee, it appears that she has collected almost $200,000 from bank accounts and tax refunds. Claims include Interinsurance Exchange's claim for over $13.5 million and the claim of Johnny White for a little more than $291,000. Interinsurance

---

[1] *In re Acclaim Resource Partners, LLC* was assigned case no. 23-70222 and was filed in the Central District of Illinois, Springfield Division.

[2] *In re Kahuna Business Group, Inc.* was assigned case no. 23-70223 and was filed in the Central District of Illinois, Springfield Division.

Exchange filed an emergency motion for relief from stay, which was initially denied. Its renewed motion remains pending before this Court.

Kahuna Business Holdings, LLC filed its voluntary petition under Chapter 7 on March 27, 2023.[3] Frank Lunn signed the petition, but no title for Mr. Lunn was disclosed; Attorney A. Christopher Cox filed the petition. Jeffrey D. Richardson was appointed the case trustee. After investigation, on September 5, 2024, the Trustee filed a report of no distribution indicating that he had located no assets to administer. Interinsurance Exchange filed an emergency motion for relief from stay that was initially denied without prejudice. Its renewed motion for stay relief to pursue the California litigation against Kahuna Business Holdings was granted after hearing and in the absence of objection by the Trustee or Kahuna Business Holdings by order entered November 5, 2024. The case was closed December 19, 2024.

*C.  The California Litigation*

At the time the bankruptcy cases at issue here were filed, Interinsurance Exchange had litigation pending in California against the individual Debtors and the related entities. The California case was filed October 6, 2017, in the Superior Court of the State of California, County of Orange, and captioned: *Interinsurance Exchange of the Automobile Club, Plaintiff v. Acclaim Resource Partners, LLC; Kahuna Business Holdings LLC; Kahuna Business Group Inc.; Kevin G. May, an individual; Dean R. Kohn, an individual; Tammy Cook, an*

---

[3] *In re Kahuna Business Holdings, LLC* was assigned case no. 23-70224 and was filed in the Central District of Illinois, Springfield Division.

*individual; Bryan Bauer, an individual; Frank Lunn, an individual; F. Scott Rathbun, an individual; and Does 1 through 100, inclusive, Defendants.*[4] A fifth amended complaint is pending in the case and contains counts pleaded under theories of negligence, breach of fiduciary duty, theft, conversion, "money had and received," accounting, specific performance, and breach of contract. The complaint seeks judgment for actual damages of $3,273,049.69, pre-judgment interest, and triple damages on the theft count pursuant to California law. It also seeks an award of numerous equitable remedies such as injunctive relief, an equitable lien, a constructive trust, a resulting trust, and the appointment of a monitor, special master or referee.

The state court complaint identifies Interinsurance Exchange as a reciprocal insurer with a principal place of business in California. It describes Acclaim as an Illinois limited liability company formed in 2005 and as a subrogation services company whose services included the investigation and evaluation of insurance claims, the settlement of such claims, and the distribution of settlement funds. The four individual Debtors named as Defendants were described in the complaint as Illinois residents and as members, managers, officers, and alter egos of Acclaim.

Interinsurance Exchange alleges in the complaint that, in 2014, it entered into a written Subrogation Services Agreement with Acclaim whereby it agreed to refer to Acclaim certain subrogation claims for recovery. The subrogation agreement set forth various terms, including those for

---

[4] The case was assigned case no. 30-2017-00948432-CU-FR-CJC.

compensation of Acclaim and for the distribution of net proceeds to Interinsurance Exchange. The gist of the complaint is that, after entering into the subrogation agreement, Acclaim failed to timely and accurately remit the amounts due to Interinsurance Exchange and provided false documents and information to Interinsurance Exchange about what was being collected, what was due to be paid, and when monies would be paid. At the end of 2016, Interinsurance Exchange terminated the subrogation agreement effective March 2017. Thereafter, from March 2017 through October 2017, Acclaim failed to remit amounts due to Interinsurance Exchange in a cumulative total exceeding $3 million. Acclaim closed its business without paying the amounts owed to Interinsurance Exchange. Interinsurance Exchange asserts that the four individual Debtors owe it the amounts due from Acclaim based on allegations of alter ego and theories of piercing the limited liability veil of Acclaim. Interinsurance also claims that Kahuna Business Holdings and Kahuna Business Group are liable for the amounts owed, apparently because those entities provided accounting services to Acclaim.

According to Interinsurance Exchange, the California litigation was set for a jury trial scheduled to begin shortly after the bankruptcies were filed. The California litigation has been stayed as to the four individual Debtors and the three related entities since March 2023.

### D. The Complaints to Determine Dischargeability

Prior to the issuance of discharges to the individual Debtors, Interinsurance Exchange filed complaints to determine dischargeability against each of them.[5] The complaints were essentially identical and sought the entry of judgment against each individual in the amount of $3,273,049.69 plus interest, treble damages under California law, and punitive and exemplary damages. The adversary complaints also sought to have the debts determined to be nondischargeable based on allegations of fraud, breach of fiduciary duty, larceny, embezzlement, and willful and malicious injury to property. The Debtors responded by filing motions to dismiss asserting that the complaints failed to state claims upon which relief could be granted. In particular, the Debtors said that the complaints failed to plead plausible claims that the Debtors were personally liable for the debts of Acclaim and failed to plead plausible claims under any theory that the debts, even if owed by the individuals, should be excepted from their discharges. After considering the written arguments of all parties, the Debtors' motions to dismiss were granted. This Court found that the complaints failed to plead plausible causes of action to hold the Debtors individually liable and to except the debts, even if owed, from discharge. The Court also noted that the complaints were defective in that the allegations were pleaded in long, rambling paragraphs rather than the

---

[5] The cases were captioned: *Interinsurance Exchange of the Automobile Club v. Dean R. Kohn,* adv. case no. 23-7022; *Interinsurance Exchange of the Automobile Club v. Frank F. Lunn IV,* adv. case no. 23-7023; *Interinsurance Exchange of the Automobile Club v. Tammy D. Cook,* adv. case no. 23-7024; and *Interinsurance Exchange of the Automobile Club v. Francis S. Rathbun,* adv. case no. 23-9007. All were filed in the bankruptcy court for the Central District of Illinois.

short, plain statements required by the federal and bankruptcy rules. The dismissals were without prejudice to replead.

Interinsurance Exchange filed amended complaints in each case. The amended complaints contained the same theories of nondischargeability as the original complaints but contained more precise allegations of individual wrongdoing on the part of each Debtor.[6] Some but not all of the long, rambling paragraphs were restructured. The Debtors again filed motions to dismiss asserting that the amended complaints failed to state claims upon which relief could be granted. After briefing, this Court dismissed counts one and two of each complaint with prejudice, finding that each of those counts purported to state claims for oral fraudulent misrepresentations about the financial condition of Acclaim and were barred by controlling precedent.[7]

The Debtors' motions to dismiss were denied as to the remainder of the amended complaints. The Court found that the amended complaints had cured many of the defects in the original complaints, albeit in some instances by the narrowest of margins. The Court expressed continuing concerns about the unwieldy format of the amended complaints and the inclusion of factual allegations that appeared wholly unrelated to the actual claims. The amended

---

[6] The amended complaint filed as to Tammy Cook did not include a claim for willful and malicious injury to property under §523(a)(6).

[7] This Court rendered an oral decision dismissing the original complaints. In that decision, the Court spent considerable time discussing the requirements of §523(a)(2)(A) and the holding of *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709 (2018). Neither party had discussed the *Appling* issues in their briefs, and the Court admonished both parties as to its importance and likely applicability to these cases. Thus, it was surprising to have Interinsurance Exchange replead counts one and two in a very similar fashion as the original complaints and to have it argue that its allegations were not about the financial condition of Acclaim when similar allegations had been expressly characterized in the original complaints as concerning Acclaim's financial condition. The failure of Interinsurance Exchange to at all consider the law on this issue justified the dismissals with prejudice.

complaints clearly delineated that the claimed losses of Interinsurance Exchange accrued after it terminated its contract with Acclaim effective March 2017. The bulk of the allegations in the amended complaints, however, related to conduct of Acclaim and the individual Debtors in the several years before the losses occurred or not plausibly tied to the alleged losses.[8] The Debtors answered the amended complaints and, to the extent necessary, discovery is ongoing.

### E.  The Stay Relief Motions

As stated above, shortly after the individual and related entity bankruptcy cases were filed, Interinsurance Exchange filed emergency motions for relief from stay in each case. The motions were virtually identical and claimed that, under California law, a mandatory five-year rule was in place that required commercial cases be tried within five years of filing.[9] Interinsurance Exchange asserted that, because the California litigation was filed in October 2017, it was bumping up against that five-year deadline which had already been extended due to the COVID-19 pandemic. It claimed that, because only seven of the nine defendants in the California litigation had filed bankruptcy, the California court might order it to trial as to the two remaining defendants and thus cause what it claimed would be irreparable harm.

---

[8] For example, this Court questioned why Interinsurance Exchange would plead detailed facts in each amended complaint about Acclaim's overdrafts on its business checking account in 2015. The allegations establish that all such overdrafts were covered by Acclaim's bank, no creditors—including Interinsurance Exchange—went unpaid or suffered any loss due to the overdrafts, and the issue was resolved by the individual Debtors signing personal guarantees with the bank to cover any further overdrafts.

[9] Interinsurance Exchange generally cited "Cal. Code Civ. Pro. §583.310" as authority for the five-year rule and its need for emergency relief.

The motions for relief from stay also set forth 29 other factors that Interinsurance Exchange asserted formed the basis for emergency stay relief. Those factors included multiple, repeated assertions that the California litigation was ready for trial, that the California judge had superior expertise as to the relevant legal issues, and that extreme prejudice would be suffered by Interinsurance Exchange if the stay was not modified. Interinsurance Exchange also complained that the bankruptcies had been filed on the eve of the California trial and that there was a "facial absence of a reason" for the bankruptcy filings other than to deal with its claims.

At the initial, emergency hearing on the motions for relief from stay, the trustees, Mr. Richardson, Mr. Prillaman, and Ms. Reinbold, all appeared in opposition to the motions, claiming that they had not had time to fully review and determine the extent of the assets in each of the bankruptcy cases. They argued that it would be prejudicial to them to allow substantial litigation in which their rights might be affected to proceed so early in the cases. Attorney Cox appeared and objected on behalf of all the debtors and claimed, as it related to the individual Debtors, that they should not be required to defend the California litigation until the issue of their discharges and any exceptions to such discharges were resolved by this Court. After hearing the arguments of all counsel, this Court denied Interinsurance Exchange's request for emergency relief. The denial was without prejudice and, by written orders, the stay in each case was continued in full force and effect pending further hearing.

After the Debtors filed answers to the remaining counts of the amended complaints to determine dischargeability, Interinsurance Exchange asked for a final hearing on the stay relief motions. A final evidentiary hearing was scheduled as requested.

Prior to the hearing and in accordance with this Court's pretrial order, the parties docketed their exhibits. Interinsurance Exchange docketed 59 exhibits, largely consisting of multiple pages of filings from the California litigation.[10] The individual Debtors docketed 13 exhibits, likewise largely consisting of documents from the California case; the same 13 exhibits were docketed in each case.[11] Interinsurance also docketed a stipulation by the parties that non-certified copies of documents from the California litigation were authentic and admissible for all uses and purposes that certified copies might be used. Each party also filed a request for the Court to take judicial notice of their docketed exhibits. Interinsurance Exchange asked for judicial notice of 56 of its 59 filings; the individual Debtors asked for judicial notice as to all their exhibits.

The hearing commenced with a discussion of the requests for judicial notice. The Court said that, because the parties were in apparent agreement on the issue and because of the nature of the documents for which judicial notice was sought, the Court was inclined to grant the requests. The Court pointed out, however, that judicial notice might be an ineffective method of proof without some testimony about each particular exhibit. Although the Court

---

[10] The exhibits were marked A – Z, AA – AZ, and BA – BG.
[11] The exhibits were marked A – M.

would review the docketed exhibits, without testimony there could be no guarantee that the Court's review would focus on the parts of the exhibits the parties wanted it to focus on and, likewise, no guarantee that the Court not see things in the documents that the parties did not want to be the Court's focus. Counsel for Interinsurance Exchange said he understood but was concerned about a question the Court had raised at the initial hearing on the stay relief motions regarding collateral estoppel and whether it would apply if the case went back to California and the individual Debtors failed to appear and participate in the trial. He wanted to establish, by docketing substantial portions of the California litigation record, that the case had progressed to a point that even if the Debtors did not further appear, any judgment against them would not constitute a default judgment under California law. He suggested that even a cursory review of the docketed exhibits would establish that point. The requests for judicial notice filed by both parties were granted.

Interinsurance Exchange called Tammy Cook as its first witness. Ms. Cook said that she lives in LeRoy, Illinois, which is about a 20-minute drive to her attorney's office and about a 90-minute drive to the courthouse in Springfield. She acknowledged that she is a defendant in the California litigation. Ms. Cook was shown Exhibit BE and identified it as Acclaim's response to a request to admit facts filed in the California litigation. She acknowledged her signature on the verification page of the response that she had signed as a representative of Acclaim and agreed that she understood that she was admitting facts when she signed the response.

Ms. Cook also identified Exhibit BF as her individual response to a request to admit facts filed in the California litigation. She again acknowledged her signature on the verification page and said that she understood she was admitting facts when she signed. Ms. Cook further identified Exhibit BG as the subrogation agreement between Acclaim and Interinsurance Exchange. She said that she had seen the agreement before and had read it. She said that a signature on the document that purported to be that of Kevin G. May appeared to be his signature; she identified Mr. May as a co-defendant in the California litigation who had not filed bankruptcy. Ms. Cook confirmed that her deposition was taken in the California litigation three times and estimated the total time of the depositions at ten hours. She said that she is generally familiar with the video-conferencing platform Zoom but did not use Zoom from her home.

Francis Rathbun was the next witness called by Interinsurance Exchange. He said that he resides in Fairbury, Illinois, an hour and 45-minute drive from Springfield and a 45-minute drive from his attorney's office. He said that his deposition was taken in California on one occasion; the deposition was videotaped and lasted about seven hours. He said that he is familiar with and had used Zoom.

Interinsurance Exchange next called Dean Kohn as a witness. Mr. Kohn said that he lives in Bloomington, Illinois; from his home, it is a 10-minute drive to his attorney's office and a 60-minute drive to Springfield. He said that

his deposition was taken in the California litigation three times and that the depositions were videotaped. He is familiar with and has used Zoom.

Frank Lunn was the next witness called by Interinsurance Exchange. Mr. Lunn said that he now lives in Gilbert, Arizona, and had flown from Arizona to Peoria, Illinois, the day before to appear at the hearing. He said that his deposition was taken in the California litigation; the deposition was videotaped and lasted about seven hours. He said that he was a member/manager of Acclaim but denied that he was chairman of Acclaim's board of directors. With respect to Kahuna Business Group, Inc., Mr. Lunn said that he was president and CEO and was responsible for the day-to-day affairs of the business. With respect to Kahuna Business Holdings, LLC, he said that he was a manager but denied being responsible for the day-to-day affairs of the business.

The last witness called by Interinsurance Exchange was its own employee, Courtney Young. Mr. Young appeared by Zoom from Costa Mesa, California. He confirmed that he was having no technical difficulties with his appearance. Mr. Young said that, as an employee of Interinsurance Exchange, he was familiar with the California litigation. His deposition was taken twice in the case, and each deposition lasted a full day. He said that one deposition was in person in Los Angeles and the other was taken by Zoom. He also said that other Interinsurance Exchange employees, including Tammy Wittal, Heather Billotti, and Lester Tung, had their depositions taken in connection with the California litigation. Although he did not attend all of their depositions, he was involved in some of the preparations for the depositions. Under cross-

examination, Mr. Young admitted that he does not frequently use Zoom for work; his company more regularly uses the Microsoft Teams platform for video-conferencing. He did note, however, that there were technical difficulties with screen sharing during some of the depositions conducted over Zoom.

At the conclusion of Mr. Young's testimony, Interinsurance Exchange rested its case. Interinsurance Exchange's Exhibits BE, BF, and BG—which were not subject to the previously granted request for judicial notice—were admitted into evidence.

The Debtors first called Roger Prillaman as a witness. Mr. Prillaman acknowledged that he is the case trustee for all four individual Debtors and that, in each of their cases, assets had been collected. He opined that the litigation involving Interinsurance Exchange should remain in the bankruptcy court and that the stay should not be modified. Mr. Prillaman pointed out that the bankruptcy court has exclusive jurisdiction over dischargeability complaints of the type pending against the Debtors here and that many of the court decisions in favor of granting stay relief to pursue litigation in other forums arose in different contexts than presented here.[12] Mr. Prillaman expressed concern that the Debtors might be forced to litigate on an uneven playing field if this Court allowed the California litigation to proceed. He said that the individuals had been largely stripped of their assets and likely had few

---

[12] Mr. Prillaman referred several times to "*Fernstrom*" presumably meaning *IBM v. Fernstrom Storage & Van Co. (In re Fernstrom Storage & Van Co.)*, 938 F.2d 731 (7th Cir. 1991). As will be discussed below, the Court agrees with Mr. Prillaman that, although *Fernstrom* provides guidance on stay relief generally and is important precedent, its context is so different from what is before this Court that it provides limited assistance in resolving the specific issues here.

resources to hire counsel. Mr. Prillaman was aware that the Debtors' California attorney, Johnny White, had expressed an intent to withdraw due to nonpayment of fees and noted that Attorney White had filed significant claims in each of the bankruptcy cases.

On cross-examination, Mr. Prillaman acknowledged that he was appearing by Zoom but demurred when counsel for Interinsurance Exchange suggested that he was likely an expert on Zoom. Mr. Prillaman was aware of the Debtors' pending counterclaim in the California litigation, as well as their pending motion seeking fees for Attorney White based on an "Anti-SLAPP" statute. Mr. Prillaman said that he had not hired counsel to represent the estates or to pursue any counterclaims or other litigation in California. He said that he had weighed the likely merits of the estates' potential claims, the fact that Mr. White's attorney's lien might attach to any recovered proceeds, and the cost of hiring counsel in deciding—thus far—against taking action in California. He said that he was a fiduciary to all creditors in the cases and had a duty to maximize the potential distribution to all. He acknowledged to counsel for Interinsurance Exchange that he was familiar with the concept of collateral estoppel but declined to agree that the facts in the California case were the same as those necessary to prove up the dischargeability complaints. He further declined to speculate as to any preclusive effect that a California jury verdict might have on the matters pending here.

Jeana Reinbold was called next by the Debtors. Ms. Reinbold said that she is the trustee in the Kahuna Business Group case and that her preference

would be for all remaining issues to be resolved locally in the bankruptcy case. She has collected assets for administration and distribution and believed that the bankruptcy court remained the best forum for resolving open issues. She noted that the individual Debtors likely had no resources to defend themselves or the corporation in California. She acknowledged that the Debtors' California attorney and his law firm had filed a large claim in the case she is administering.

Under cross-examination, Trustee Reinbold admitted that she had not hired counsel and was not pursuing any matters in the California litigation. She said, however, that she had approached local counsel for Interinsurance Exchange about estimating its claim for purposes of distribution and had been told, "No." She believed that, based on the anticipated costs of litigation, the bankruptcy court remains the most convenient forum.

Tammy Cook next testified on her own behalf. She said that she objected to the granting of stay relief and confirmed that she had no insurance to cover her costs of defense or any judgment that might be entered against her in California. She stated that she had been represented by Johnny White and Christopher Cox in the California case. It was her understanding that Mr. White would be withdrawing due to nonpayment. She said that she did not have the resources to hire new California counsel to defend her at trial. Under cross-examination, Ms. Cook agreed that she was paying Mr. Cox to defend her in the bankruptcy court.

Dean Kohn also testified again. He said that he had no insurance to cover his defense or any judgment entered in the California litigation. He assumed Johnny White would withdraw due to nonpayment and said that he did not have the resources to retain new California counsel. Mr. Kohn acknowledged that he was currently being represented by Attorney Cox and was paying for fees and costs incurred. He also said that he understood Attorney Cox had been admitted to represent him in the California litigation.

Francis Rathbun was also called to testify again. Like Ms. Cook and Mr. Kohn, Mr. Rathbun said that he was represented in the California litigation by Johnny White and Christopher Cox, but he expected Mr. White to withdraw due to nonpayment of fees. Mr. Rathbun was not aware of any other attorneys who might represent him, and he said he did not have resources to hire another attorney. He also said that he was without insurance to cover the cost of defense or to pay any judgment entered against him. Under cross-examination, Mr. Rathbun said that he was employed and earning a salary. He also agreed that his California co-defendant, Mr. May, was represented by counsel but said he was not certain of the attorney's identity.

Frank Lunn testified next. He said that, like the others, he was represented in the California litigation by Mr. White and Mr. Cox but assumed that Mr. White would be withdrawing. Mr. Lunn said that he did not have insurance that would cover his defense or pay any judgment entered against him. He was not aware of any attorney who might represent him in California and had no resources to mount a defense. Under cross-examination, he agreed

that Mr. Cox was representing him in pending matters and that he was incurring fees for such representation. Mr. Lunn agreed that no depositions had been taken in the adversary cases and said that he did not know if any interrogatories had been propounded.

The last witness the Debtors intended to call was Johnny White who was scheduled to appear by Zoom. Because the hearing had progressed more quickly than anticipated, Mr. White was not immediately available when the Debtors were ready to call him. After conferring, counsel for the Debtors and Interinsurance Exchange stipulated that, if called, Mr. White would testify (1) that he and his firm intended to withdraw from representing the Debtors in California; (2) that no motion to withdraw had yet been filed; (3) that no order allowing any withdrawal had yet been granted; (4) that Attorney Cox was admitted in California pro hac vice but, under the terms of such admission, would need local counsel to appear with him in order to continue representing the Debtors; and (5) that Aryeh Kaufman, the attorney representing co-defendant Kevin May in the California litigation, would conceivably be available to serve as local counsel with Mr. Cox. With the stipulation, the Debtors rested. Interinsurance Exchange offered no rebuttal testimony.

## II.      Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. All bankruptcy cases and proceedings filed in the Central District of Illinois have been referred to the bankruptcy judges. CDIL-Bankr. LR

4.1; *see* 28 U.S.C. §157(a). Matters involving modification of the automatic stay are core proceedings. 28 U.S.C. §157(b)(2)(G). The issues before the Court arise from the Debtors' bankruptcies themselves and from the provisions of the Bankruptcy Code and may therefore be constitutionally decided by a bankruptcy judge. *See Stern v. Marshall*, 564 U.S. 462, 499 (2011).

### III.   Legal Analysis

Interinsurance Exchange seeks relief from the automatic stay to pursue the California litigation on the basis that there is "cause" for such relief. 11 U.S.C. §362(d). Cause for stay relief is a broad and undefined concept; courts consider a variety of factors in determining whether cause to modify the stay exists in a particular case. *Fernstrom*, 938 F.2d at 735; *In re Londrigan*, 2014 WL 4384368, at *5 (Bankr. C.D. Ill. Sept. 3, 2014). In the Seventh Circuit, factors to be considered in deciding whether cause exists to grant stay relief for litigation to proceed in another forum include: (1) the prejudice to the debtor or the bankruptcy estate from allowing the litigation to proceed; (2) the relative hardship to the debtor and to the party seeking relief; and (3) the creditor's probability of prevailing on the merits of the litigation. *Fernstrom*, 938 F.2d at 735; *Matter of Udell*, 18 F.3d 403, 410 (7th Cir. 1994). The Seventh Circuit has not, however, limited courts to the factors it has articulated, and other factors therefore have been considered. *In re Grogg*, 295 B.R. 297, 305 n.6 (Bankr. C.D. Ill. 2003) (Perkins, J.). Additional factors include the connection of the litigation to the bankruptcy case, whether relief would result in a partial or

complete resolution of the issues, whether insurance coverage is available, and whether there are interests of judicial economy. *Id.*

Generally, when considering a creditor's motion for relief from stay, a debtor or other party opposing the relief has the burden of proof on all issues other than equity in property. 11 U.S.C. §362(g). Where the basis for the motion is "cause," however, the movant has the initial burden of proof. *Garcia v. Sklar (In re Sklar)*, 626 B.R. 750, 762 (Bankr. S.D.N.Y. 2021). The decision to grant or deny stay relief is within the discretion of the bankruptcy court. *In re C&S Grain Co.*, 47 F.3d 233, 238 (7th Cir. 1995) (citation omitted); *In re Holtkamp*, 669 F.2d 505, 507 (7th Cir. 1982) (citation omitted).

After considering the evidence presented, the arguments of counsel, and the brief submitted by Interinsurance Exchange, this Court has determined that two legal issues control the decision here. Those issues are that this Court has exclusive jurisdiction to determine whether the debts alleged to be owed by the Debtors to Interinsurance Exchange will be excepted from their discharges and that Interinsurance Exchange has no right to a jury trial on the issue of dischargeability. Considering these two issues in light of the *Fernstrom* factors and the other factors cited in *Grogg*, the motions for stay relief must be denied.

### A. This Court Has Exclusive Jurisdiction Over Issues of Dischargeability.

Each of the individual Debtors has received a discharge, and no determination has yet been made whether the debts alleged to be owed to Interinsurance Exchange will be excepted from those discharges. Some courts

suggest that, until such a determination is made, the debt in question should be presumed to be discharged. *See In re Prate*, 634 B.R. 72, 78 (Bankr N.D. Ill. 2021) (relying on *In re Gibellino-Schultz*, 446 B.R. 733, 740-41 n.5 (Bankr. E.D. Pa. 2011)). Although any such presumption would carry no evidentiary weight at a hearing on the ultimate issue of dischargeability, this Court agrees that, for purposes of enforcing the stay and considering whether stay relief is appropriate, the fact that the debts have not yet been determined to be nondischargeable is a compelling factor.

The allegations made in support of excepting the alleged debts from the Debtors' discharges are based on claims of fraud, embezzlement, larceny, breach of fiduciary duty, and willful and malicious injury to property under §523(a)(2), (4), and (6). Accordingly, the decision about whether the alleged debts will be excepted from the Debtors' discharges is exclusively within the jurisdiction of this Court. *See* 11 U.S.C. §523(c)(1). That makes this Court the only court that can fully resolve all issues between the parties. *Prate*, 634 B.R. at 76 (citations omitted). Sending the parties to California would result in a full resolution of their disputes only if Interinsurance Exchange lost on all issues. If Interinsurance Exchange prevailed on any cause of action there, the case would have to return here for a determination of the dischargeability of the judgment obtained. Keeping the case here, by contrast, could result in a full resolution because this Court can determine the existence and dischargeability of the alleged debts and, notwithstanding the protests of Interinsurance Exchange, can liquidate the debts if determined to be nondischargeable. *Id.* at

76-77 (relying on *In re Collazo*, 817 F.3d 1047, 1053 (7th Cir. 2016), and *In re Hallahan*, 936 F.2d 1496, 1508 (7th Cir. 1991)).[13] The dischargeability issues are wholly related to the bankruptcy cases and cannot be resolved by the California court; this is a factor that the *Grogg* court noted among considerations for determining whether to grant stay relief. *Grogg*, 295 B.R. at 305 n.6.

As the *Prate* court points out, the exclusive and full jurisdiction of this Court to hear the entirety of the dispute between the parties compels a finding in favor of the Debtors on the first two *Fernstrom* factors. There would be great prejudice to the Debtors in granting stay relief as they would be compelled to try a complex multicount case in California notwithstanding the fact that some or all of the obligations sought to be enforced in that case have been discharged. And that hardship most certainly outweighs any hardship to Interinsurance Exchange. It can get a full and fair hearing here or, if it prefers, it can withdraw its request for a money judgment from its complaints to determine dischargeability and reserve the damages issues for trial later and elsewhere if it prevails on the dischargeability issues. The choice of trying damages separately from liability is up to Interinsurance Exchange. But it cannot establish cause for stay relief by making the affirmative choice to try its case in two different forums and then claiming that it is being disadvantaged and prejudiced by its own choice.

---

[13] The Court recognizes there are exceptions to its ability to liquidate claims, but no such exception applies to the present matters. *See, e.g.*, 28 U.S.C. §157(b)(5).

The issue of hardship is not simply one of finances; concepts of fairness and efficiency are also at play. Interinsurance Exchange's counsel suggests that a jury trial could be held in California and that the jury findings of wrongdoing could then be incorporated into a simple motion for summary judgment to be filed before this Court to establish nondischargeability. The argument is not credible. The California complaint does not contain a count for fraud but does contain allegations of oral fraud similar to the counts dismissed from the adversary complaints here. Breach of fiduciary duty is raised in the California litigation, but the allegations are not limited to the narrowly defined concept of defalcation by a fiduciary developed by the Seventh Circuit that controls the issue of dischargeability here. *See In re Berman*, 629 F.3d 761, 767 (7th Cir. 2011); *In re Marchiando*, 13 F.3d 1111, 1115 (7th Cir. 1994).[14] Willful and malicious conduct is pleaded in the California conversion count but in a broader context than the standard for nondischargaeability developed under Supreme Court precedent. *See Kawaauhau v. Geiger*, 523 U.S. 57, 63-64 (1998) (Not every intentional tort judgment is nondischargeable; the debtor must intend the injury not just the wrongful act.); *First Weber Group, Inc. v. Horsfall*, 738 F.3d 767, 774-75 (7th Cir. 2013) (no preclusive effect for state law conversion judgment because intent required for conversion did not meet the

---

[14] A full discussion of the differences between the definitions of fiduciary for dischargeability purposes and under California law is beyond the scope of and unnecessary for this Opinion. The counts in each complaint here for defalcation as a fiduciary have withstood motions to dismiss, and it will be up to Interinsurance Exchange to prove conduct on the part of each Debtor that meets the narrow definitions developed by the Seventh Circuit or justifies an expansion of those definitions. Fed. R. Bankr. P. 9011(b). It may be important to note, however, that the relief sought in the California complaint for the imposition of a constructive trust or a resulting trust is the type that the Seventh Circuit has specifically identified as not supporting a finding of nondischargeability under §523(a)(4). *Marchaiando*, 13 F.3d at 1115.

*Geiger* standard for intent under §523(a)(6)). Thus, findings of wrongdoing based on different, albeit similar, theories and causes of action will likely not support the quick and simple motion for summary judgment envisioned by Interinsurance Exchange.

To the contrary, proceeding with the state court trial first could lead to lengthy reviews of the California record and contentious disputes about how the jury was instructed and what was actually litigated and decided. When asked about the issue at the hearing, counsel for Interinsurance Exchange suggested that he might move to amend the California complaint to bring it more in line with the dischargeability causes of action. But that response undercuts the argument that the California case is ready for trial. It also raises questions about the preclusive effect of a California judgment on amended claims that the Debtors—presumably, as counsel foresees—never appear and defend against. Of course, amending the state court complaint is only a suggestion of what might be done. Whether the California court would allow such amendments and whether any such amendments would be helpful in the ultimate resolution of the pending dischargeability issues is a matter of pure speculation. None of counsel's arguments overcome what appears to be the common-sense approach to resolving the parties' disputes; we must first figure out which, if any, causes of action survive the bankruptcies and are excepted from the discharges previously granted to the Debtors before moving on to determining damages.

The third *Fernstrom* factor—the likelihood of success on the merits—is also implicated here. This Court has no opinion on which party will ultimately prevail and could find this third factor to be neutral. But it can also say with absolute certainty that Interinsurance Exchange must prevail here on the merits of the dischargeability issues in order to go forward with liquidating its damages and, importantly, ever collecting its damages. Putting the dischargeability issues off for another day in order to liquidate in another forum damages that may or may not be owed makes little sense; counsel for Interinsurance Exchange made no persuasive argument to the contrary.

The exclusive jurisdiction of this Court to determine the dischargeability of the debts alleged to be owed by the Debtors to Interinsurance Exchange compels denial of the motions for relief from stay. All the *Fernstrom* factors and several of the *Grogg* factors—such as judicial economy and the relationship of the matter to the bankruptcy case—weigh strongly in favor of denying the motions. None of the factors support granting the motions.

### B. Interinsurance Exchange Does Not Have a Right to a Jury Trial on its Complaints to Determine Dischargeability.

Interinsurance Exchange included demands for a jury trial with each of its complaints to determine dischargeability. It is not entitled to a jury trial, however, because a dischargeability proceeding is the "type of equitable claim for which a party cannot obtain a jury trial." *Hallahan*, 936 F.2d at 1505; *Pausch v. DiPiero (In re DiPiero)*, 553 B.R. 122, 132 (Bankr. N.D. Ill. 2016).

Interinsurance Exchange is not going to have a jury trial on the dischargeability issues because it is not entitled to a jury trial. This is true despite its exhaustive efforts and arguments attempting to circumvent the result.

Interinsurance Exchange suggests that it should be allowed to go to California and have a jury decide the underlying liability issues involving the Debtors' conduct with the expectation of obtaining specific findings of wrongdoing by the Debtors that would then be used as collateral estoppel in the dischargeability proceedings here. But the posture of the proceedings here simply does not support that course of action. This Court does not need guidance from a jury—to which the creditor is not entitled—to assist it in evaluating the evidence. And as set forth above, this Court has little confidence that a jury, hearing evidence under California law, would be instructed on the nuances of each cause of action pending here such that its findings could bind this Court. Interinsurance Exchange really wants a jury trial and feels cheated that its plan for such a trial was derailed by the bankruptcy filings. But it makes no persuasive argument that it is entitled to have the jury trial go forward before this Court determines which, if any, of its causes of action survive discharge. Its repeated complaints that the bankruptcy filings were somehow unfair are understandable but do not support granting relief from stay.

In arguing for a jury trial, Interinsurance Exchange also raises several logistical arguments. Counsel suggests this Court's courtroom is too small and

would be uncomfortable for a jury trial. That is true but not relevant. Interinsurance Exchange is not getting a jury trial because it is not entitled to a jury trial. If it were entitled to a jury trial, a jury trial would be held; the logistics would be resolved. Also, it must be noted that the District Court has authorized bankruptcy judges to conduct jury trials in the Central District of Illinois. CDIL-Bankr. LR 4.2. Counsel's suggestion that this Court is unable to conduct a jury trial due to lack of authority, experience, or expertise is therefore a nonstarter.[15] The Seventh Circuit has clearly said litigants are not entitled to a jury trial in dischargeability proceedings, but Interinsurance Exchange nevertheless filed jury demands in all four proceedings. That is the reason for the denial of a jury trial.

Finally, Interinsurance Exchange suggests that if it is not granted relief from stay, it would seek to withdraw the reference of the pending matters. All cases under Title 11 and related proceedings are referred by the district courts to the bankruptcy courts. 11 U.S.C. §157(a); CDIL-Bankr. LR 4.1. The district court may withdraw that reference in whole or part as to any case. 11 U.S.C. §157(d). In this Court's anecdotal experience, the withdrawal of the reference as to an entire bankruptcy case is rare. District courts generally are not called on to supervise trustees, liquidate property, review claims, and handle all the other estate administration matters in a case. But withdrawal of the reference

---

[15] Notwithstanding the local rule, consent of the parties is generally required for a bankruptcy judge to conduct a jury trial. 28 U.S.C. §157(e). Issues of consent were not discussed, however, because of the lack of entitlement to a jury trial in the first place.

as to a particular adversary proceeding may well be appropriate in a particular case where cause is shown.

When the issue of withdrawal of the reference was raised by Interinsurance Exchange's counsel, this Court understood the argument to be that, by moving to the District Court, his client could obtain a jury trial on all the issues it would be entitled to a jury on in state court. But, as this Court pointed out, withdrawal of the reference would not bring the California litigation before the District Court. It would only bring the complaints to determine dischargeability before the District Court. And the Seventh Circuit case law holding that a determination of nondischargeability is an equitable action for which there is no entitlement to a jury trial would apply in District Court just as it does in this Court. Further, charged with deciding without a jury whether certain debts were excepted from the Debtors' discharges, the District Court would likely not empanel a jury to decide damages on all possible theories of indebtedness before deciding the threshold issues of the dischargeability of the alleged debt under each theory. Obviously, it would be up to the District Court to decide how to proceed, but it would make little sense to spend the limited resources of the District Court to have a jury consider issues of punitive and exemplary damages with respect to debts that will not be excepted from discharge.

The lack of entitlement to a jury trial combined with the exclusive jurisdiction of this Court to hear the dischargeability complaints weighs heavily in favor of denying the motions for relief from stay. Sending the parties to

California to try parts of their disputes with limited expectations that such a move will assist in the resolution of the issues pending here would be a waste of judicial resources and impose a hardship on the Debtors that is not outweighed by the corresponding hardship to Interinsurance Exchange of having to try the dischargeability issues here first. This factor compels denial of the motions for stay relief.

## C. The Other Issues Raised by Interinsurance Exchange Do Not Support Relief from Stay.

At the hearing on the motions for stay relief, Interinsurance Exchange concentrated its proofs and arguments on the fact that the California litigation is ready for trial and on its assertions that case law requires this Court to ignore the expense to the Debtors of litigating in California. Neither factor controls here, but both issues merit brief discussion.

### i.      The Readiness of the California Litigation for Trial Does Not Compel Stay Relief.

It is not disputed that the California litigation was set for jury trial when the bankruptcies were filed. And it also does not appear to be disputed that discovery was complete in California. The bankruptcies, however, stayed the pending trial and raised new issues. Interinsurance Exchange says it should be allowed to try the case it is ready to try and to see where that leads as far as

resolution of the dischargeability issues here. It says that it is not ready to try the dischargeability complaints here.

Interinsurance Exchange believes that the issues in California are very similar to the issues raised in the dischargeability complaints. That is not wholly wrong, but it overlooks the nuances of the provisions of §523(a)(2), (4), and (6) and the cases interpreting such provisions. A comparison of the state court complaint with the complaints pending here makes clear that the claims in the state court are broader and less defined than what would be required to except a debt from discharge in bankruptcy. Counsel says that he could amend and narrow the California complaint but, as previously stated, that suggestion undercuts not only the representation that the case is ready for trial but also the idea that such amendments would be helpful.

Equally important, this Court questions the credibility of the representation that, although discovery is complete in California, significantly more needs to be done here. Interinsurance Exchange cannot have it both ways. If, as it claims, the causes of action are so similar that all that will be needed after a California jury trial is a simple, quick motion for summary judgment in the dischargeability proceedings here, then it must have all it needs to prove up the alleged wrongdoing of the Debtors. If it does not have the evidence to prove up its claims for nondischargeability, then sending the case to California for a jury trial likely will not be helpful in resolving the issues here. Everything that happened to form the factual basis for the complaints in California and here happened in 2017 or before. Interinsurance Exchange put

on witness after witness in the hearing before this Court to testify about the extensive depositions that have already been taken. It is just not credible that discovery is complete enough to go forward with the California trial with the expectation of obtaining specific findings of wrongdoing that would bind this Court on the dischargeability issues but, at the same time, discovery is incomplete on the actual dischargeability issues here. Counsel for Interinsurance Exchange did not address this issue or the contradiction in positions.

Related to being ready to go to trial in California, counsel for Interinsurance Exchange raised two evidentiary issues and said that his client would be prejudiced as to both if required to try the dischargeability issues here first. He argued that Tammy Cook's signed responses to requests to admit facts for herself and for Acclaim in the California litigation would not carry the same weight here. He said that she could deny the admissions here that would be admissible in the California case without her testimony. That may well be true, but he asked Tammy Cook at the hearing in this matter whether she had signed the responses and understood that she was making admissions when she did so. She said, as to both responses, that she signed them and understood what she was doing. To suggest that she, under oath at trial on the dischargeability complaint, would deny the genuineness of her signature or claim to have been confused about what she was doing is pure speculation wholly unsupported by the facts presented by Interinsurance Exchange itself.

Likewise, Interinsurance Exchange says that it has boxes of bank records related to Acclaim's operations which are more than seven years old. The Debtors apparently stipulated to the authenticity of the records in the California case, and Interinsurance Exchange believes that it can use the records there without the necessity of calling a bank officer to authenticate the records. It claims that it is prejudiced here because the California stipulation may not be enforceable in the dischargeability proceedings and because it is likely not feasible to authenticate the records at this point absent stipulation due to their age. But Interinsurance Exchange presented no evidence of discussions with counsel for the Debtors about either renewing the stipulation or agreeing that the prior stipulation would remain binding. The parties here have repeatedly stipulated to the admissibility of documents, and, although the underlying issues are hotly contested, the parties and their attorneys have conducted themselves professionally and with a high degree of civility. This Court has no expectation that the Debtors and their attorney will renege on their stipulation regarding the bank records; it is likely that the Debtors will want and need to introduce some of those same records in their defense. At this point, the concern is unfounded and does not provide support for the requested stay relief.

In making its arguments, Interinsurance Exchange relies on several cases which do hold that stay relief should be granted or at least seriously considered when litigation in another forum is at an advanced stage. The cases do not, however, support the granting of stay relief here. Interinsurance

Exchange heavily relies on *Fernstrom*, quoting at length from its decision to allow stay relief for the continuation of litigation in the district court because the litigation had been pending for years. *Fernstrom*, 938 F.2d at 736-37. But as Trustee Prillaman pointed out in his testimony, the context of the *Fernstrom* decision is wholly different from what is before this Court. *Fernstrom* involved a Chapter 11 case in which the moving creditor, despite failing to file a claim, wanted to continue ongoing litigation against the debtor to the extent of insurance coverage. *Id.* at 733. The bankruptcy court granted stay relief because any judgment obtained would be paid solely from insurance proceeds and have no impact on the bankruptcy estate or the debtor. *Id.* The Seventh Circuit affirmed, weighing several factors and finding that the existence of insurance removed the prospect of harm to the debtor and thus justified stay relief. *Id.* at 736. Although *Fernstrom* provides guidance on how stay relief motions should be evaluated and decided, it provides no direct support to Interinsurance Exchange on its requested relief here.

Interinsurance Exchange also relies heavily on and quotes from *In re Parkinson*, 102 B.R. 141 (Bankr. C.D. Ill. 1988) (Altenberger, J.). The creditor in *Parkinson* was granted stay relief to proceed with litigation in state court subject to returning to the bankruptcy court for a determination of dischargeability on any judgment obtained against the debtor in state court. *Id.* at 143. The context of *Parkinson* seems somewhat similar to what is before this Court, and the *Parkinson* court did specifically rely on the fact that the state court litigation had been pending for a long time in granting stay relief. *Id.* at

142. But strangely, *Parkinson* does not disclose the nature of the cause of action in the state court, the other parties involved, the specific relief sought, or the theory or subsection of §523(a) that might be at issue in a subsequent dischargeability proceeding. *Parkinson* says what Interinsurance Exchange says that it does, but absent any facts and with little discussion of the relevant factors, it is simply not a persuasive case. *Prate* and *DiPiero*, both discussed above, are much more persuasive.

       ii.      *The Expense of Proceeding in California is Not a Controlling Factor in Denying Stay Relief.*

Interinsurance Exchange has repeatedly argued that the expenses of litigation should not be considered in deciding whether to grant it relief from stay. It quotes, at length, *In re Quay Corp.*, 2006 WL 208704, at *3 (N.D. Ill. Jan. 24, 2006), for the proposition that the costs of litigation are not a factor in deciding stay relief. But the issue before the court in *Quay* was whether a stay pending appeal should be granted and not the underlying substantive issue of whether the bankruptcy court erred in granting stay relief for the entry of judgment in a case that had been substantially tried before the bankruptcy filing. *Id.* at *1. *Quay* analyzes the factors in granting a stay pending appeal rather than factors involved in determining whether to grant relief from the automatic stay in the first place. As with the other issues discussed above, Interinsurance Exchange relies on a case for language that sounds good, all the while ignoring the context in which the case arose and was decided.

Nevertheless, the Court finds that the cost of litigation here is not a controlling factor.

The Court heard little evidence about the expenses of going forward with the litigation in California versus here. This Court's anecdotal experience suggests that the litigation has been and will continue to be expensive on both sides. Multiple complex issues need to be resolved, and it is hard to imagine a cheap or easy way to effectuate a resolution of all such issues. Three of the Debtors live in central Illinois, suggesting that it would be personally less expensive for each of them to try the dischargeability actions here rather than to pay for and attend a trial in California. But based on the posture of the cases and the positions taken by Interinsurance Exchange, it looks like there will ultimately be trials in both places. The issue then remains a matter of which case should go first rather than how much it will all cost.

Nothing in Interinsurance Exchange's presentation supports a finding that there will be monetary savings for anyone involved by trying the California case first. This Court remains convinced that trying the dischargeability cases first will narrow or at least more precisely define the scope of claims against the Debtors that will survive the bankruptcies. That, in turn, should narrow the issues involved in calculating damages. Judicial economy is well served by this Court's decision.

## IV.   Conclusion

Interinsurance Exchange is anxious to get back to California and to have the jury trial to which it believes it is entitled on all its claims against the Debtors. It asserts that it has been wronged by the bankruptcy filings and should be allowed to have the day in California court previously scheduled notwithstanding the filings here. Interinsurance Exchange is not the first and it will not be the last creditor to appear before this Court and make such a plea. The plea is insufficient, however, to overcome the strong reasons for denying stay relief and for trying the dischargeability cases before assessing any potential damage claims.

The Debtors have received discharges, and whether the alleged debts to Interinsurance Exchange will be excepted from those discharges must be determined. The California litigation raises many of the same issues as the dischargeability complaints, but Interinsurance Exchange presented no proof or compelling argument that a trial on issues pleaded differently and controlled by different law would result in meaningful findings that would shorten a subsequent process here. When asked about the issue, counsel for Interinsurance Exchange said he might amend the California complaint, but it was obvious he had given little thought to the matter. This Court has no confidence that the California case—if allowed to go first—would yield meaningful findings that would assist in determining the dischargeability of any judgment rendered.

This Court has exclusive jurisdiction on the issue of dischargeability and, as stated above, does not need the assistance of a jury to which Interinsurance Exchange is not entitled to exercise its jurisdiction. The only sensible approach to resolving the issues between the Debtors and Interinsurance Exchange is to try the dischargeability complaints here and to then move on to assess damages if any debts are excepted from the Debtors' discharges. Interinsurance Exchange controls the forum choice for the assessment of damages, and if it wants to go elsewhere, so be it. The choice to litigate in two forums, however, does not provide support for its request for stay relief now. The motions for stay relief will be denied.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###