**SIGNED THIS: May 12, 2025**

_____

**Mary P. Gorman**
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | Case No.    23-70218 |
| TAMMY D. COOK, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| _____ | ) | |
| In Re | ) | |
| | ) | Case No.    23-70219 |
| DEAN R. KOHN, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| _____ | ) | |
| In Re | ) | |
| | ) | Case No.    23-70220 |
| FRANK F. LUNN, IV, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| _____ | ) | |
| In Re | ) | |
| | ) | Case No.    23-90136 |
| FRANCIS S. RATHBUN, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |

<div style="border:1px solid black;">

**O P I N I O N**

</div>

Before the Court are motions for stay pending appeal and motions for permissive abstention in the alternative to the motions for stay pending appeal filed by Interinsurance Exchange of the Automobile Club. The motions for stay seek to stay both the trial and all discovery in four related adversary proceedings pending Interinsurance Exchange's appeal of orders entered in the related main bankruptcy cases denying relief from the automatic stay to proceed with litigation in California. Because the Debtors, apparently for financial reasons, do not object to the motions for stay, the Court will stay the setting of a trial date for the adversary proceedings but will not stay all discovery. The motions for permissive abstention ask the Court to abstain but do not clearly identify the matters for which abstention is sought. Instead, the motions for permissive abstention seek a lengthy continuance of all issues raised by the adversary proceedings. Because the Court is staying the trial of the adversary proceedings, the motions for permissive abstention will be denied as moot. In its motions for stay pending appeal and its argument that it will likely succeed on the merits, Interinsurance Exchange raises issues not previously raised before this Court that are also not dispositive of any issue to be decided on appeal. For that reason, notwithstanding this Court's granting of the motions for stay pending appeal in part, a discussion of the issues raised by the motions is warranted.

# I.      Factual and Procedural Background

The factual background relevant to Interinsurance Exchange's appeals and the present motions is set forth in this Court's Opinion entered February 11, 2025, along with corresponding Orders denying stay relief upon which the appeals are based. *See In re Cook, et al.,* 2025 WL 468419, at *1 (Bankr. C.D. Ill. Feb. 11, 2025). Those facts are summarized here.[1]

Tammy D. Cook, Dean R. Kohn, Frank F. Lunn IV, and Francis S. Rathbun each filed voluntary Chapter 7 petitions in March 2023.[2] Years before the bankruptcies, Interinsurance Exchange had commenced litigation in California against the individual Debtors, three related business debtors, and other non-debtor defendants.[3] When the bankruptcies were filed, the pending fifth amended complaint was set for jury trial in California on counts pleaded under theories of negligence, breach of fiduciary duty, theft, conversion, "money had and received," accounting, specific performance, and breach of contract. The California complaint seeks judgment for actual damages of $3,273,049.69, pre-judgment interest, and triple damages on the theft count

---

[1] To the extent facts and findings repeated here differ from those set forth in the February 11th Opinion, the facts and findings in the February 11th Opinion shall control. Fed. R. Bankr. P. 7052.

[2] When the individual Debtors filed their bankruptcy petitions, voluntary Chapter 7 petitions were also filed for three related entities in the Central District of Illinois, Springfield Division. *In re Acclaim Resource Partners, LLC* was assigned case no. 23-70222. *In re Kahuna Business Group, Inc.* was assigned case no. 23-70223. *In re Kahuna Business Holdings, LLC* was assigned case no. 23-70224. Interinsurance Exchange obtained relief from the automatic stay in all three business cases to proceed with state court litigation in California. The Acclaim Resource Partners and Kahuna Business Holdings cases closed without distribution to creditors; the trustee found no assets to administer. In the Kahuna Business Group case, the trustee appears to have collected roughly $200,000 to be administered to creditors, and the case remains pending.

[3] The case was captioned *Interinsurance Exchange of the Automobile Club, Plaintiff v. Acclaim Resource Partners, LLC; Kahuna Business Holdings LLC; Kahuna Business Group Inc.; Kevin G. May, an individual; Dean R. Kohn, an individual; Tammy Cook, an individual; Bryan Bauer, an individual; Frank Lunn, an individual; F. Scott Rathbun, an individual; and Does 1 through 100, inclusive, Defendants,* and was assigned case no. 30-2017-00948432-CU-FR-CJC.

pursuant to California law. It also seeks an award of numerous equitable remedies such as injunctive relief, an equitable lien, a constructive trust, a resulting trust, and the appointment of a monitor, special master or referee.

The allegations in the California litigation are that, in 2014, Interinsurance Exchange entered into a written Subrogation Services Agreement with Acclaim Resource Partners whereby it agreed to refer to Acclaim certain subrogation claims for recovery. Thereafter, Acclaim failed to timely and accurately remit the amounts due to Interinsurance Exchange and provided false documents and information to Interinsurance Exchange about what was being collected, what was due to be paid, and when monies would be paid. Interinsurance Exchange ultimately terminated the subrogation agreement effective March 2017, and Acclaim failed to remit amounts due to Interinsurance Exchange in a cumulative total exceeding $3 million before ceasing operations. Interinsurance Exchange asserts that the four individual Debtors owe it the amounts due from Acclaim based on allegations of alter ego and theories of piercing the limited liability veil of Acclaim. The California litigation has been stayed since March 2023.

Shortly after the bankruptcy cases were filed, Interinsurance Exchange sought stay relief in each of the four main cases on an emergency basis to proceed with the litigation in California against the individual Debtors; the emergency motions were denied without prejudice. Several weeks later, prior to discharges being entered in favor of the Debtors in each of their respective cases, Interinsurance Exchange filed separate, essentially identical complaints

against them seeking a determination that the debts it claims are owed to it are excepted from the Debtors' discharges and asking for entry of judgment against each in the amount of $3,273,049.69 plus interest, treble damages under California law, and punitive and exemplary damages.[4] After the original complaints were dismissed for failure to plead plausible causes of action to hold the Debtors individually liable and to except the debts, even if owed, from discharge, Interinsurance Exchange filed amended complaints setting forth more precise allegations of fraud, breach of fiduciary duty, larceny, embezzlement, and willful and malicious injury to property.[5] After two counts of each of the amended complaints were dismissed with prejudice on the Debtors' motions because they were barred by controlling precedent, the proceedings moved forward on the surviving counts of the amended complaints. The Debtors filed answers to those complaints which remain pending.

For several months, the stay relief motions in the main bankruptcy cases were traced with the adversary proceedings pending the outcome of the Debtors' motions to dismiss the complaints. After the motions to dismiss were resolved and the Debtors had answered the adversary complaints against them, Interinsurance Exchange's stay relief motions were brought back before

---

[4] The cases were captioned: *Interinsurance Exchange of the Automobile Club v. Dean R. Kohn,* adv. case no. 23-07022; *Interinsurance Exchange of the Automobile Club v. Frank F. Lunn IV,* adv. case no. 23-07023; *Interinsurance Exchange of the Automobile Club v. Tammy D. Cook*, adv. case no. 23-07024; and *Interinsurance Exchange of the Automobile Club v. Francis S. Rathbun,* adv. case no. 23-09007. All were filed in the bankruptcy court for the Central District of Illinois.

[5] The amended complaint against Tammy Cook did not include a claim for willful and malicious injury to property under §523(a)(6).

the Court with a renewed request for stay relief to proceed with the California litigation.

A final evidentiary hearing on the stay relief motions was scheduled and held. The parties docketed their respective exhibits ahead of the hearing in accordance with this Court's pretrial orders. At the request of the parties, the Court took judicial notice of most of the many exhibits that largely consisted of voluminous filings from the California litigation. Each of the Debtors testified, as did the case trustees administering the bankruptcy estates and an employee of Interinsurance Exchange. The Court also accepted the parties' stipulations as to the testimony of the Debtors' attorney in the California litigation and as to the authenticity of other evidence. After considering the evidence and the parties' arguments, the Court ultimately denied Interinsurance Exchange's requests for relief from the automatic stay in the individual Debtors' bankruptcy cases.

The Court set forth its factual findings and legal conclusions in its Opinion dated February 11, 2025. In evaluating Interinsurance Exchange's request for relief from the automatic stay for "cause" under factors relied on by courts in the Seventh Circuit, the Court determined that two issues controlled the outcome: (1) the bankruptcy court having exclusive jurisdiction to determine whether debts alleged to be owed by the Debtors should be excepted from their discharges, and (2) Interinsurance Exchange not having a right to a jury trial on the dischargeability issues. In denying relief, the Court explained that if Interinsurance Exchange wanted the entirety of its disputes resolved by

a single court, it would have to be this Court based on it having exclusive jurisdiction over dischargeability issues. But the Court also made clear that Interinsurance Exchange would not be forced to try state law liability and damages in the bankruptcy court. If dischargeability and the underlying state law claims were going to be tried separately, however, judicial economy and hardship to the Debtors of trying a complex multicount lawsuit in California over potentially discharged debts weighed in favor of trying the dischargeability issues first.

Interinsurance Exchange timely filed its notice of appeal of the decision in each of the four Debtors' bankruptcies. Several weeks later, after the Court set each of the pending adversary complaints for pretrial conferences to be held April 22, 2025, Interinsurance Exchange filed its Motions for Stay Pending Appeal—first in the bankruptcy cases and then in the adversary proceedings. The Motions for Stay Pending Appeal were set for hearing with the previously scheduled adversary pretrial conferences. Thereafter, Interinsurance Exchange filed in all of the bankruptcy cases and adversary proceedings Motions for Permissive Abstention in the Alternative to the Motions for Stay Pending Appeal. Those Motions were set for hearing with the others.

The April 22 hearing was held as scheduled. Taking up the Motions for Stay Pending Appeal, the Court posed two questions to counsel for Interinsurance Exchange. First, why is a bankruptcy court's ability to enter a money judgment an issue for stay pending appeal when it was not an issue at trial and the Opinion appealed from made clear that this Court would not enter

a money judgment unless Interinsurance Exchange consented to the Court entering such judgment? Second, understanding the reasons for staying a trial in the adversary proceedings while the appeals are pending, what would be the hardship or other reason for staying discovery if, as Interinsurance Exchange has long contended in its pursuit for stay relief, the discovery already done in state court would largely encompass the dischargeability issues and leave minimal additional discovery to be completed in the adversary proceedings?

As to the first question, counsel for Interinsurance Exchange said that his client did not want to waive any rights and therefore would not withdraw its request for money judgment in the adversary complaints until its appeal is resolved and it can decide how to proceed based on the result. Counsel initially suggested that the Court was trying to force Interinsurance Exchange to waive its rights but later acknowledged that the Court's Opinion made clear that the decision was controlled by Interinsurance Exchange alone. When pushed on the issue of why then Interinsurance Exchange is suggesting that it will prevail on the merits of its appeal based on issues involving its claimed right to a jury trial on the damages issue, counsel shrugged and said that the claim was just one of several issues it intended to raise on appeal.  As to the second question, counsel for Interinsurance Exchange said he was not involved in the California case and did not have knowledge of what discovery had been done there. He noted that numerous documents were recently found in a building used by the Debtors' related businesses. He suggested those documents could be relevant in the adversary proceedings but would likely be time-barred in the California

litigation. Counsel's position was essentially that, because additional discovery in the adversaries would not help his client's case in state court, any discovery conducted before the state court renders judgment would be a waste of time and money if such judgment was not in Interinsurance Exchange's favor.

Counsel for the Debtors acknowledged that he had not filed any objection to the Motions for Stay Pending Appeal. He also declined to speak specifically about what discovery was done in state court as he was not lead counsel for the Debtors in the California case. He said that his clients had chosen not to object to the requests for stay pending appeal because he expects the appeal process will be expensive and it would benefit his clients financially to not have to litigate both the appeals and the adversary proceedings at the same time.

The Court also heard from co-counsel for Interinsurance Exchange. She argued that a ruling against her client on dischargeability before liability and damages are determined would effectively deprive Interinsurance Exchange of its right to a jury trial on the state court claims and could interfere with its ability to obtain any relief on any of its claims, including against non-debtors. The Court acknowledged the uncertainties and potential risks of any course of action but viewed Interinsurance Exchange's position as circular. The Court reminded the parties, as it had explained in its Opinion, that making the Debtors try several state court claims that will only survive their bankruptcies if one or more of the limited, narrower counts of the adversary complaints were decided against them is equally wasteful.

Finally, the Court heard Interinsurance Exchange on its Motions for Permissive Abstention. The Court explained that it interpreted permissive abstention under §1334 as a legal mechanism by which it could decline to hear and decide a matter over which it has jurisdiction in deference to another court that also has jurisdiction. In reading the Motions for Permissive Abstention, however, the Court understood the request to be that it simply refrain from hearing the adversary complaints while the appeals are pending. In other words, the motions were just requests for long continuances and did not actually seek to have the Court relinquish jurisdiction on any issue. Counsel for Interinsurance Exchange initially agreed that the Court was correct in its characterization of the motions; the requested relief was essentially to hold the adversary complaints in abeyance until the appeals are resolved. Notwithstanding her concessions, however, counsel insisted such relief was properly sought through the request for permissive abstention under §1334.

Following the hearing, the Court took the Motions for Stay Pending Appeal and Motions for Permissive Abstention under advisement. The matters are ready for decision.

## II.    Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. All bankruptcy cases and proceedings filed in the Central District of Illinois have been referred to the bankruptcy judges. CDIL-Bankr. LR 4.1; *see* 28 U.S.C. §157(a). Matters involving modification of the automatic

stay, matters concerning the administration of the bankruptcy estate, and thus motions for stay pending appeal of bankruptcy court orders are core proceedings. 28 U.S.C. §157(b)(2)(A), (G); *In re Quade*, 496 B.R. 520, 523-24 (Bankr. N.D. Ill. 2013). The issues before the Court arise from the Debtors' bankruptcies themselves and from the provisions of the Bankruptcy Code and may therefore be constitutionally decided by a bankruptcy judge. *See Stern v. Marshall*, 564 U.S. 462, 499 (2011).

### III.   Legal Analysis

### A. Motions for Stay Pending Appeal

Unreserved denial of stay relief is a final, appealable order. *Ritzen Group, Inc. v. Jackson Masonry, LLC*, 589 U.S. 35, 47 (2020). Generally, a stay pending appeal must first be sought in the bankruptcy court. Fed. R. Bankr. P. 8007(a). A stay pending appeal is an "exceptional form of relief and requires a considerable showing from the movant." *In re Sternitzky*, 638 B.R. 770, 776 (Bankr. W.D. Wis. 2022) (citations omitted).

The Seventh Circuit has recognized four factors that courts should consider in determining whether to grant a stay pending appeal: (1) the likelihood of success on the merits of the appeal; (2) whether the party seeking a stay will suffer irreparable injury in its absence; (3) whether other parties would be substantially harmed by a stay; and (4) the public interest at stake. *In re Forty-Eight Insulations, Inc.*, 115 F.3d 1294, 1300 (7th Cir. 1997). The party seeking the stay bears a heavy burden of justifying the relief sought and must

make a strong and substantial threshold showing of likelihood of success on the merits of the appeal. *Id.* at 1300-01.

### i.   Likelihood of Success

Interinsurance Exchange argues that the first factor is satisfied in these cases because a lesser showing of a "substantial case on the merits" is all that is required when the appeal is based on "a serious legal question." For that proposition Interinsurance Exchange cites *In re Childress*, 2010 Bankr. LEXIS 386 (Bankr. N.D. Ind. Feb. 11, 2010). But *Childress* relies on decisions outside the Seventh Circuit, gives no guidance on how the lesser standard should be applied, and does not appear to have been relied on by any other court—in the Seventh Circuit or otherwise—in the 15 years since it was decided. Courts in the Seventh Circuit overwhelmingly require a "strong" and "substantial showing" of likelihood of success. *See, e.g.*, *Sternitzky*, 638 B.R. at 777-78 (requiring showing of heightened or substantial likelihood of success), *In re Bullock*, 603 B.R. 411, 416 (Bankr. S.D. Ill. 2019) (movant must make strong and substantial showing), *In re Catalyst Lifestyles Sport Resort, LLC*, 2019 WL 2004757, at *1 (Bankr. N.D. Ind. Feb. 19, 2019) (substantial showing must be demonstrated, not merely possibility of success), *Quade*, 496 B.R. at 526-27 (requiring heightened or stronger showing than is required in preliminary injunction context); *see also Forty-Eight Insulations*, 115 F.3d at 1301 (stay

pending appeal requires substantial showing of likelihood of success).[6] To the extent *Childress* purports to describe a modified standard in the Seventh Circuit, it is an outlier.

In short, this Court does not find *Childress*—or the habeas decisions relying on *Hilton*—to be helpful in resolving the Motions for Stay Pending Appeal. But even reviewing the Motions through the lens of the *Childress* decision, the Court finds that the present cases do not meet the asserted standard.

According to *Childress*, the "substantial case" standard applies "when a serious legal question is involved[.]" *Childress,* 2010 Bankr. LEXIS 386, at *6. Again, what constitutes a "serious legal question" is not clearly defined, but Interinsurance Exchange identifies "[c]onflicting authority on jury trial rights as well as *Stern v. Marshall* issues" as being "central to the appeal." Interinsurance Exchange's position misconstrues the decision that it has appealed.

In its designation of the record and statement of issues on appeal, Interinsurance Exchange sets forth several issues regarding its right to a jury trial and the authority for this Court to enter judgment on liability and damages on state law causes of action. In its Motions for Stay Pending Appeal,

---

[6] There is a line of decisions from courts in the Seventh Circuit relying on *Hilton v. Braunskill*, 481 U.S. 770, 778 (1987), in which the Supreme Court, considering a stay pending appeal of a successful habeas petition, stated: "Where the State establishes that it has a strong likelihood of success on appeal, or where, failing that, it can nonetheless demonstrate a substantial case on the merits, continued custody is permissible if the second and forth factors in the traditional stay analysis militate against release." *See, e.g., Myers v. Superintendent, Indiana State Prison,* 2020 WL 2803904, at *5 (S.D. Ind. May 29, 2020), *Dassey v. Dittmann,* 2016 WL 6684214, at *2 (E.D. Wis. Nov. 14, 2016), *Johnson v. Loftus*, 2008 WL 4542952, at *1-2 (N.D. Ill. Apr. 1, 2008). But those decisions deal exclusively with habeas, and the modified standard of *Hilton* has not been adopted beyond those circumstances.

Interinsurance Exchange asserts that "a right to a jury in the adversary proceedings *outside* of a dischargeability determination is subject to conflicting legal approaches both inside and outside of this Circuit" and that a "stay pending appeal is warranted when an area of law is in a state of flux." But Interinsurance Exchange's asserted right to a jury trial on issues of liability on its state court claims has not been challenged by this Court, and its effort to frame the issues on appeal as such seriously mischaracterizes this Court's ruling.

The Opinion makes clear that the decision to deny stay relief was controlled by two issues: this Court's exclusive jurisdiction to determine dischargeability of debts in bankruptcy, and Interinsurance Exchange not having a right to a jury trial on the issues of dischargeability. The law on these issues is not in a state of flux; Interinsurance Exchange concedes it does not have a right to a jury trial on dischargeability, and each of the cases cited by Interinsurance Exchange is consistent with that basic principle. When pressed at the hearing on the Motions for Stay Pending Appeal, counsel for Interinsurance Exchange was unable to articulate any reason why the issue it now raises would be properly before the District Court or how a decision one way or the other on the limits of this Court's jurisdiction and authority would impact the issues actually on appeal. This Court is only going to hear the dischargeability issues over which it has exclusive jurisdiction; asking the District Court to decide the scope of its authority to hear other issues that it is not going to hear is wasteful and meaningless.

Interinsurance Exchange contends that a serious legal question exists with respect to the Court's holding that it has "the exclusive and full jurisdiction . . . to hear the entirety of the dispute between the parties" and is "the only court that can fully resolve all issues between the parties." How Interinsurance Exchange interprets the Court's comments is not entirely clear, but it is also not a material issue of dispute. In the context of the discussion and the Opinion as a whole, it is obvious that the statements were made by way of explaining that, unlike the California court, this Court has the ability to resolve both the dischargeability claims and underlying liability and damage claims. On the very same page of the Opinion from which the quoted language is taken, the Court makes clear that the choice of whether to have state law liability and damages determined as part of the dischargeability proceedings in bankruptcy is Interinsurance Exchange's to make. All that this Court decided in denying stay relief to Interinsurance Exchange was that the dischargeability issues should be decided here before the Debtors are forced to try a complex multicount case in California.

Interinsurance Exchange's argument regarding *Stern v. Marshall* issues is intertwined with its jury trial argument and equally flawed. Interinsurance Exchange notes the criticism directed at the Seventh Circuit's decision in *In re Hallahan*, 936 F.2d 1496, 1508 (7th Cir. 1991)—and its stated preference for bankruptcy courts deciding all issues related to dischargeability at once—in light of the Supreme Court's pivotal decision in *Stern v. Marshall*, 564 U.S. 462 (2011). But the significance of *Stern* to the present dispute is greatly

overstated. *Stern* called into question the authority of bankruptcy courts to enter final judgment on certain state law claims. *Id.* at 499. Importantly, the Supreme Court has since clarified that *Stern* does not preclude bankruptcy courts from (1) hearing claims over which they have statutory authority but lack constitutional authority to decide and submitting proposed findings of fact and conclusions of law to the district courts to accept or reject, or (2) obtaining the parties' consent to enter final judgment on such claims. *See Executive Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 36-38 (2014); *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 682 (2015).

The thrust of this Court's decision—and its reliance on *Hallahan*—is that it could hear and decide the state law claims if Interinsurance Exchange wanted to have the entirety of its disputes with the Debtors decided by one court—and certainly if Interinsurance Exchange were to consent to this Court entering final judgment on the state law claims.[7] But this Court also made clear in its decision that Interinsurance Exchange would not be forced to litigate anything here other than the dischargeability issues that are solely within this Court's jurisdiction to hear and determine.

At the hearing on the Motions for Stay Pending Appeal, the Court asked why its constitutional authority to enter a money judgment on the state law claims is even relevant to the appeals and the Motions for Stay Pending Appeal

---

[7] Of course, that is not to say that this Court's ability to enter a money judgment on the underlying state law claims depends on the parties' consent. At issue in *Stern* was a state law counterclaim not necessarily resolved in ruling on a creditor's proof of claim. *Stern*, 564 U.S. at 487. Several courts across circuits have "held post-*Stern* that a bankruptcy court may adjudicate a claim in the course of deciding whether it is dischargeable in bankruptcy." *Fifth Third Mtg. Co. v. Blouin*, 2015 WL 3623630, at *3-4 (N.D. Ill. June 9, 2015).

given that the issue had not been previously raised and given the Court's repeated comments in its Opinion, at trial, and before that it would not enter such money judgment because Interinsurance Exchange apparently did not want the Court to do so. Acknowledging that his client asked for money judgments in the adversary complaints, counsel for Interinsurance Exchange countered that his client never said it did not want the bankruptcy court to enter a money judgment and was reserving its rights pending the outcome of the appeal. He used that position to bootstrap his argument that irreversible damage will have occurred if the adversary proceedings are not stayed pending the appeals and this Court enters judgment on both dischargeability and damages—as requested in the adversary complaints—before the appeals are resolved. It suffices to say, again, on this point that the Court has no intention of entering a money judgment under the circumstances of these cases—regardless of what authority exists for doing so—without Interinsurance Exchange's express consent.

Looped into its inapposite arguments about jury trial rights and the authority for bankruptcy courts to enter money judgments, the Motions for Stay Pending Appeal make passing reference to what the Court agrees is the real issue of dispute: whether the determination of liability and damages based on state law "*should come* before determination of dischargeability." Resorting to familiar arguments, Interinsurance Exchange asserts that trying the adversary proceedings "without a jury and without any form of bifurcation" will effectively deprive it of its Seventh Amendment rights and run afoul of other

legal authority. On this point too, the argument misses the mark and is borderline disingenuous. This Court has made clear that it will bifurcate the proceedings and only try the dischargeability issues if that is what Interinsurance Exchange wants. Apparently, that is a decision that Interinsurance Exchange does not want to make, but it is not a basis for granting it stay relief.

Interinsurance Exchange also relies on *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500 (1959)—a Supreme Court decision involving equitable claims and a compulsory counterclaim for treble damages brought under antitrust laws— for the proposition that legal issues to which a jury right applies must be decided before equitable claims. But the Supreme Court itself has noted that *Beacon Theatres* and its progeny are not constitutional decisions and merely enunciate a general prudential rule. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 334-35 (1979); *Katchen v. Landy*, 382 U.S. 323, 338-340 (1966). In *Katchen*, the Court suggested that the rule of *Beacon Theatres* be followed only to the extent consistent with congressional intent and the controlling statutory scheme. *Katchen*, 382 U.S. at 339-340 (requiring jury trial of legal claims before determination of bankruptcy preference action would be inconsistent with the purposes of the Bankruptcy Act and would dismember a congressionally prescribed scheme for trying statutory claims). Applying *Beacon Theatres*—which did not involve bankruptcy claims—to the dischargeability causes of action here would—similar to *Katchen*—be

inconsistent with the purpose and scheme of the Bankruptcy Code and related statutes.

*Beacon Theatres* was premised in large part on the collateral-estoppel effect that an equitable determination could have in a subsequent legal action. *Parklane Hosiery*, 439 U.S. at 333-35. In the same vein, Interinsurance Exchange complains that this Court's ruling on stay relief failed to address the impact of the "ongoing litigation" in California against non-debtor Kevin May, speculating that, among other things, Kevin May might try to use "the Bankruptcy Court's findings or decision on dischargeability as collateral estoppel in the Appellant's California litigation." But application of collateral estoppel does not violate the Seventh Amendment. *Id.*; *see also New West, L.P. v. City of Joliet*, 891 F.3d 271, 273 (7th Cir. 2018). And, in any event, Interinsurance Exchange failed to present any evidence for this Court to consider regarding the impact of the "ongoing litigation" against Kevin May and its juxtaposition with the proceedings against the Debtors.

To be sure, at the trial on the stay relief motions, counsel for Interinsurance Exchange argued that, because Kevin May did not file bankruptcy, the claims against him will go to trial in California and will result in Interinsurance Exchange having to try its claims several times. But the evidence that is in the record suggests only that the California litigation is and will remain stayed in its entirety until such time that it can be tried against all defendants. Interinsurance Exchange offered no other evidence for the Court to

consider on the issue. And without evidentiary support, Interinsurance Exchange's concerns are purely speculative.

The crux of the matter is that Interinsurance Exchange believes it is entitled to try the state law liability and damage claims in California court before the dischargeability issues are decided here. Such entitlement, however, does not exist in the provisions of §362. Section 362(a) stays a broad scope of activities when a bankruptcy case is filed, including the continuation of prepetition judicial proceedings to recover a claim against the debtor that arose before the commencement of the case. 11 U.S.C. §362(a)(1). Subsection (b) of §362 carves out several exceptions to which the automatic stay under subsection (a) does not apply; no argument has or could be made that the California litigation at issue here falls within those exceptions. *See* 11 U.S.C. §362(b). As such, Interinsurance Exchange was left to proceed with requesting relief from the stay under §362(d). Subsection (d) provides for relief from the automatic stay in particular situations as well as on a broader basis "for cause." 11 U.S.C. §362(d). Not falling into the other more tailored bases for stay relief, Interinsurance Exchange appropriately requested relief for "cause" under subsection (d)(1).

Importantly, the decision to grant or deny relief from the automatic stay for "cause" is a matter of bankruptcy court discretion. *In re C&S Grain Co.*, 47 F.3d 233, 238 (7th Cir. 1995) (citation omitted); *In re Holtkamp*, 669 F.2d 505, 507 (7th Cir. 1982) (citation omitted). This Court exercised that discretion—after considering the several factors used in the Seventh Circuit and reviewing

cases applying those factors—to conclude that cause did not exist in the cases before it and accordingly denied Interinsurance Exchange's requests for relief from the automatic stay. If, as Interinsurance Exchange contends, the existence of an unliquidated claim based on state law creates an absolute and unreserved entitlement to stay relief for cause before a bankruptcy court determines whether the alleged debt will be discharged, it would undermine the widely recognized discretion of bankruptcy courts to decide whether cause exists and stay relief should be granted. Under Interinsurance Exchange's position, creditors in every case could demand stay relief to return to state court to litigate their claims notwithstanding the bankruptcy filing and the likelihood that the debt in question will be discharged. Interinsurance Exchange has cited no authority to support such a position.

The fact that other courts have found cause to grant stay relief in a particular situation for one reason or another does not compel that such relief be granted in these cases or any others. Rather, it highlights the spectrum of decisions and the circumstantial nature of determining whether cause exists to grant relief from the automatic stay. For every decision in favor of granting stay relief there exists another with similar facts in which stay relief was denied. Even cases cited by Interinsurance Exchange that question a bankruptcy court's authority post-*Stern* to "liquidate a nondischargeable claim and enter a final money judgment" ultimately heard and decided the dischargeability of the alleged debts without liquidating the claims and entering money judgment, leaving those issues to be decided later in other forums. *See Dennis v. Swain (In*

*re Swain)*, 2025 WL 228446, at *10-11 (Bankr. N.D. Ill. Jan. 17, 2025); *Handler v. Moore (In re Moore)*, 625 B.R. 896, 899-900, 905-06 (Bankr. N.D. Ill. 2021); *Kelly v. Che (In re Young-Soo Che)*, 2013 WL 2109438, at *7 (Bankr. N.D. Ill. May 15, 2013).

The exercise of discretion here, which resulted in the decision denying Interinsurance Exchange relief from the automatic stay to proceed with the California litigation in favor of first resolving the dischargeability issues that can only be decided by this Court (or the District Court), is consistent with the authority cited by Interinsurance Exchange and does not implicate *Stern* or Interinsurance Exchange's asserted jury trial rights in any meaningful way. For those reasons, the Court finds that Interinsurance Exchange has not shown a likelihood of success on the merits of its appeal. That is enough to deny the Motions for Stay Pending Appeal. *See Forty-Eight Insulations*, 115 F.3d at 1301.

Nevertheless, in the absence of objection from the Debtors, the Court will grant Interinsurance Exchange's request in part and stay trials in any of the adversary proceedings pending resolution of the appeals. The Court will not, however, stay discovery in the adversary proceedings but will refrain, for the time being, from setting final deadlines to complete discovery.

### ii.    *Relative Harm and Public Interest*

Although trials in the adversary proceedings will be stayed pending appeal notwithstanding Interinsurance Exchange's failure to make the threshold showing of its likelihood of success on the merits of the appeals, it is

worthwhile to briefly discuss the other factors for determining whether a stay pending appeal is appropriate. Interinsurance Exchange contends in its Motions that it will suffer irreparable harm if the adversary proceedings are not stayed "because this Court's determination relative to non-dischargeability will take place before the appellate review of the Motion, and will effectively deprive the Exchange of its jury rights relative to its state law claims." The argument is misguided for the all the reasons already discussed, but it is also moot because the Court will stay the trials in the adversary proceedings pending the appeals.

To be sure, at the hearing on the Motions, counsel for Interinsurance Exchange argued that even proceeding with discovery in the adversary proceedings would cause harm. He noted the recent discovery of what may be relevant documents in an office building previously used by the Debtors' businesses, which he surmised would be time-barred for purposes of the California litigation but might lead to significantly more discovery in relation to the adversary proceedings. According to him, it would be wasteful to have conducted discovery in the adversary proceedings if Interinsurance Exchange were to lose at trial in California. As the Court explained at the hearing, it is a circular argument that cuts both ways; if Interinsurance Exchange tried and obtained a money judgment in California only to later lose on dischargeability here, it will have been as much if not more of a "waste" of its own and others' resources in litigating the California case. Whichever cause of action is tried first—dischargeability or state law liability and damages—there is the real possibility that one side or both will have expended resources it would not have

expended in a different scenario. That is the nature of litigation and particularly litigation in multiple forums. The only way to avoid such risk here would be to have this Court—the only court able to resolve the entirety of the parties' disputes—hear and decide the liability, amount, and dischargeability of Interinsurance Exchange's claims against the Debtors. But, again, that decision is left to Interinsurance Exchange.

For their part, the Debtors did not object to the Motions for Stay Pending Appeal—a decision counsel for the Debtors said was made in the interest of preserving his clients' limited resources and allowing them to focus on what he anticipates will be an involved appeal process. And while the Court appreciates counsel's candor, debtors in bankruptcy having limited resources to defend their interests is neither a novel idea nor a persuasive argument for frustrating the efficient and expeditious administration of bankruptcy cases and proceedings. The initial stay relief motions in the bankruptcy cases and the related adversary proceedings were filed in 2023. In that time there has been much litigation with very little progress toward full resolution of the parties' disputes. To a large degree, the delays in the cases and proceedings are a natural consequence of overlapping issues involving multiple, zealously represented parties across several related cases and proceedings. But, sooner than later, the adversary proceedings need to be resolved, and there is very little reason not to engage in any pretrial discovery.

As mentioned, with the appeals pending and adversary trials to be stayed, the Court will not set a firm deadline for completing discovery on the

dischargeability complaints. But if the parties choose not to engage in discovery while the appeals are pending, their decision will not be a basis for extending whatever deadlines the Court sets down the road.

## B. Motions for Permissive Abstention

In the alternative to its Motions for Stay Pending Appeal, Interinsurance Exchange filed Motions for Permissive Abstention in each bankruptcy case as well as the related adversary proceedings. The Motions for Permissive Abstention cite 28 U.S.C. §1334(c)(1) as supplying the authority for the relief requested and ask that the Court "abstain" from the adversary proceedings until the conclusion of the appeals in the bankruptcy cases.

Section 1334 provides that "[n]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. §1334(c)(1). Although the statute plainly permits a court to abstain from hearing a core proceeding, abstention is generally inappropriate where the core matter to be abstained from can only be decided by the court being asked to abstain. *See Jung v. IRS (In re Jung),* 597 B.R. 872, 877-78 (Bankr. W.D. Wis. 2019) (citations omitted). This is particularly true when abstention may result in re-litigating the matter in front of the abstaining court to decide the core matter. *Id.* at 879.

Although the Motions for Permissive Abstention, on their face, ask this Court to hold the adversary proceedings in abeyance until the conclusion of the appeals in bankruptcy as an alternative to the requests to stay the proceedings pending appeal, it was not clear from the substantive arguments in the Motions what relief Interinsurance Exchange actually seeks. The Motions cite several authorities to support an argument for this Court to allow the California court to proceed with trial and determination of liability and damages on Interinsurance Exchange's state law claims. At hearing on the Motions, counsel for Interinsurance Exchange clarified that her client was asking the Court to "abstain for a period of time while the appeal is pending from moving forward with the adversary proceedings."

Based on counsel's comments and because trial of the adversary proceedings will be stayed pending the appeals, Interinsurance Exchange's Motions for Permissive Abstention will be denied as moot.[8] In finding that the Motions for Permissive Abstention are mooted by the grant of partial relief on the Motions for Stay Pending Appeal, the Court is mindful that it is not affirmatively staying discovery in the adversary proceedings. But, as the Court explained at hearing, permissive abstention under §1334(c)(1), if appropriate, would only be granted as to the state law claims over which the California court has jurisdiction; the Court cannot decline to exercise its exclusive jurisdiction over the dischargeability issues. The California court does not have

---

[8] The denial will be as to the Motions filed in the bankruptcy cases as well as those filed in the adversary proceedings. Separate orders that incorporate the findings and conclusions set forth in this Opinion will be entered in the adversary proceedings.

jurisdiction over issues of dischargeability, and pretrial discovery on such issues would have no bearing—and, if counsel is correct, no utility—in the state court litigation.[9]

## IV.   Conclusion

Interinsurance Exchange understandably wants its day in California court where it long ago commenced litigation against the Debtors and others that was set for jury trial only to be stayed by the filing of the Debtors' bankruptcy cases. When this Court, in its discretion, denied requests to proceed with the California litigation, Interinsurance Exchange exercised its right to appeal the decision. But whatever happens with the appeals, Interinsurance Exchange will eventually need to come back to this Court— barring a loss in California—to litigate its dischargeability complaints. The adversary proceedings have now been pending for two years, and the Court sees little reason to delay moving forward, at least on pretrial discovery of dischargeability issues.

Interinsurance Exchange wants the adversary proceedings to be stayed pending its appeals. But the Motions fell well short of establishing entitlement to relief, and Interinsurance Exchange seriously mischaracterizes the issues

---

[9] And to the extent Interinsurance Exchange might later contend that the Motions for Permissive Abstention are indeed requests for this Court to decline exercising jurisdiction over not only the state law issues but dischargeability issues as well, the requests are not well taken given the posture of the cases. Interinsurance Exchange was denied relief from the automatic stay to proceed with the litigation in California, and their appeals of that decision are pending. Absent reversal on appeal or an unforeseen change in circumstance that warrants reconsideration of the issue, this Court would not be inclined to disturb its decision to deny relief from the automatic stay to proceed with litigation in California before the issues of dischargeability are resolved here. What amounts to the same request repackaged as a request for permissive abstention would not affect that determination.

decided by this Court and upon which it bases its appeals. Nevertheless, in the absence of objection from the Debtors, the Court will enter orders staying the proceedings for purposes of trial. It will not, however, stay discovery and expects the parties to make initial disclosures and begin exchanging other written discovery in hopes of narrowing the issues for additional discovery and trial at a later date.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Orders.

### ###